The next case this morning is 523-06-32, People v. Cross. Arguing for the appellant is Eun Seong Nam. Arguing for the athlete is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning. We've had a busy morning. Not that many cases so far. We've had a lot of questions, so I don't know if this will be the same or not, but Ms. Nam, are you ready to proceed? Yes, Your Honor. All right, you may do so. May it please the court, counsel, Eun Seong Nam on behalf of Andre Cross. I mean, let me stop the timer. The timer hasn't even started yet, but let me remind you one other thing. I was supposed to remind you, and I forgot. Justice Welch is unavailable this morning, but he will be listening to the recorded arguments later, and he will be discussing the case with us at a later time once he's listened to the arguments. So I want to make sure you're all aware of that. I apologize for the interruption. Ms. Nam, you can begin again. She had not started the timer, so we'll start over. Okay. May it please the court, counsel, Eun Seong Nam on behalf of Andre Cross. Where Mr. Cross was convicted of armed violence, the question before the court today is whether an outright reversal is warranted because the state failed to prove beyond a reasonable doubt that he committed the underlying offense while armed with a dangerous weapon. And again, a person commits armed violence when, while armed with a dangerous weapon, he commits a felony that's defined by Illinois law. So to prove the while armed or otherwise armed element, constructive possession is just not enough. And we know this through the Illinois Supreme Court case in People v. Condon. And we need more than the mere physical existence of a weapon, meaning that the state has to prove immediate access to or timely control over. And this is because of the intended purpose of the armed violence statute, which is to deter individuals from using dangerous weapons, so to avoid the deadly consequences which might result. A person with a weapon, we know that a person with a weapon at his disposal is forced to make spontaneous and often instantaneous decisions to kill without time to reflect on the use of such deadly force. So without a weapon at hand or in his hand, a defendant is not faced with this immediate or deadly decision. And here, this deterrent purpose was not served under the circumstances in Mr. Cross' case. Our cases like the cases of People v. Condon, Nalon, Shilato, Caldwell, Smith, Melgoza, and these are all cases cited in Mr. Cross' briefs. And I want to direct this court to the state's closing argument to begin. The state told the jury, this is not an easy case. It isn't circumstantial evidence. I do want you to go back. I do want you to use your common sense. And the state's argument in closing applies to the appeal as well. Mr. Cross' appeal requires common sense understandings. This court should consider the lead up, which began with Detective Mori's misidentification that led to the initial stop, that led to the pursuit and ultimately to Mr. Cross' arrest. So to begin, it's important to recall that the Decatur police, they were not looking for Mr. Cross on the night in question. He wasn't under suspicion. There was no warrant out for his arrest. Basically, Detective Mori sees a silver Impala pass and then misidentifies the person in the car, saying Detective Mori thought that he was a person of interest, that they were looking for this person. It ends up not being the person of interest. It ends up being Mr. Cross. But based on this misidentification, now the Decatur police officers that are on duty, they are on high alert. They're conducting surveillance of the silver Impala. They're trailing Mr. Cross. And again, the common sense understanding comes into play here where it's nighttime, it's dark outside. We have covert vehicles that are following or trailing Mr. Cross. And again, he hadn't done anything wrong. There was no warrant out for his arrest. He wasn't under suspicion. Basically, the misidentification leads to this. And so the officers describe his behavior as counter surveillance or him driving suspiciously. But at nighttime, if there's covert cars following you around, I think it makes sense that maybe his behavior wasn't normal when he was being trailed. But again, the misidentification leads to his initial stop. And as this court, by watching the videos can tell, the initial stop is where there's multiple officers that are involved in the initial stop because of his car being under surveillance. So we have Detective Morey's car stopping him. There's Officer Larner, who's also there. We have that covert car with Officers Hessey and Rosenberry in the front. We have Officers Clark and Scallon that are also there. So we have all of these police cars that kind of group and push Mr. Cross into the street. And that's when Mr. Cross asked the officers, what did I do wrong? You know, why am I being pulled over? And the officers just tell him without explaining, you know, take out your keys, get out of the car, and then we'll talk to you. So once that happens, that's when he pulls off. So that's kind of the lead up to the pursuit and his ultimate arrest. And the problem here is while the pursuit is happening, was he armed? Did he commit the underlying offenses of the aggravated fleeing or looting while he was armed? So while he had immediate access to the Glock gun that was ultimately found or was the weapon within his reach? And the common sense understanding, considering all of the facts and the light most favorable to the state is no, because where the gun is ultimately found, it's where Mr. Cross is associated with. So when the officers run his license plates and registration, they know that the 1400 block of Edward Street is an area of interest because it's a high crime area, but also his car, when they check the registration and license plate, it ran back to the 1400 Edward Street. So that's where he's from or that's where he's associated with. So we have that as a reason why maybe the gun that's found there has his DNA on it. But again, there's no fingerprints. His DNA is one of four that's found on the gun. The other kind of common sense approach that's needed in this case is the fact that this gun is found in someone's yard. So it's found eight to 10 feet deep into someone's backyard, and it has to surpass or it has to overpass this six to 10 foot fence. So we have a fence that's, according to the officer, six to 10 feet tall. And then this gun is found eight to 10 feet deep within the yard. And the state's theory is that Mr. Cross, while he's driving in excess speeds at one point or at more than one point, maybe, reaching 80 to 90 miles per hour, and he's allegedly hurling or chucking this gun outside his window while the chase is happening. So considering that, and we also have the jury questions and the jury's handwritten notes in this case, where we have the why for yes, no, the and for no, and then we have the unsures. Considering the jury's question of asking the definition of reasonable doubt, speculation, reasonable inferences, we ask this court to consider that in the totality of the circumstances found in Mr. Cross's case. So just to kind of go through some of the cases, in People v. Malgoza and People v. Wise, the courts found that there was no possession or, there was no possession or, I guess, the while armed element when a gun was found either out of reach of the defendant who was driving or, you know, two rows back or five feet back, where it was not within reach. And here we know that the officer, so Detective Morey, he had his flashlight and he was shining it into the car. He did not see a gun. We have the officer's car, so Officer Clark and Scallon, their car had a flashlight that was shining into Mr. Cross's car. And considering the light that was shining into the car, no one was able to find or see a gun. So there was no testimony of a gun being in Mr. Cross's car. Anyone seeing a gun in Mr. Cross's car, anyone seeing Mr. Cross toss the gun, and that's comparable to the case of People v. Brown where the defendant, there were officers and lay or civilian witnesses who saw the defendant toss a gun outside the car and they also saw him shooting the gun. So there was clearly a while-armed, the while-armed aspect or the element was met in Brown. But Mr. Cross's case is more like the cases of Malgoza, Wise, Condon, Nalon, Shilato, and Smith. That's because there was no nexus. There had to be a nexus and that wasn't met in this case. So unless this court has any questions, we ask this court to reverse outright his conviction for armed violence because there was no nexus of the while-armed element being met while he was driving in excess speeds or violating the traffic lights or the traffic stops or the control devices. All right, thank you. Questions, Justice Barberos? No, thank you. All right, thank you. Let me give an opportunity for rebuttal in a moment. Thank you. Ms. Theodoratos, are you ready to proceed? Yes, Your Honor, thank you. Great, thank you. May it please the court. Good morning. My name is Jessica Theodoratos for the People. The evidence presented at trial proved defendant guilty of armed violence beyond a reasonable doubt. Defendant asserts that the people failed to prove he had a firearm on his person as he was chased by the police, but that disregards the natural influences that flow from the evidence. The evidence at trial provided that when defendant was stopped by multiple police cars, he was the only occupant of his vehicle. Defendant sped off, taking the door off of a police car and almost hitting an officer. This indicated to the officers that defendant had something in his possession that he did not want police to know about. Defendant drove at speeds over 89 miles per hour and dissipated multiple traffic control signals. Defendant had two opportunities along his chase with police where he could have discarded something and in one of those locations, police found a gun with a switch and a laser on it. During the chase, when defendant was through the alley where the gun was found, police were about a half a block behind defendant and completely lost sight of him. Let me ask you a question because I'm just curious. You said that the gun that was found had a switch and a laser. What is a switch? A switch turns a normally not automatic weapon into an automatic weapon if it's properly attached. It was when the gun was found with it off of it, but nearby. When defendant was eventually, the gun was found over a wire fence which would have been on the same side defendant was driving on. Defendant was eventually apprehended and found with no contraband. The testimony at trial provided that after a high-speed chase, it is assumed by law enforcement that a perpetrator found with no contraband pitched it along the way. Then on defendant's phone was pictures of a weapon with the same switch attachments and laser. Also, his DNA was found on the weapon. Actual possession of a firearm is proven by testimony that the defendant exercised dominion over the firearm by using it, concealing it, or throwing it away. In the light most favorable to the prosecution, defendant had the firearm in his possession, which led him to flee from police. Then he discarded it from the car before he was apprehended. The gun was recovered along the police chase route with physical evidence tying it to defendant. This would provide actual possession because defendant exercised dominion over the weapon by discarding it during the police chase. It would be illogical to believe defendant engaged the police for no reason in this police chase and at the same time had already tossed this weapon right along the back alley route that he took with police into a woman's locked backyard. All of the evidence provides that defendant was driving at very high speeds and disobeying traffic control trying to put distance between himself and the police. Defendant had opportunity to discard the weapon, did so, and then he was apprehended with no additional contraband. The picture of the weapon on his phone and defendant's DNA match provide additional support. The only clear inference that can be drawn from the evidence here is that defendant had knowledge of the weapon and exercised control over it by discarding it after driving high speeds during this police chase. In conclusion, the people asked this court affirm defendant's conviction and sentence. Are there any questions that I may answer at this time? Is the felony that causes the armed violence charge is that the speeding and disregarding traffic control devices or was there another felony involved? Yes, I believe it was the speeding over 21 miles per hour over the posted limit. Is there any evidence of how fast he was going at the point where the weapon was found or had he sped before he got to that location? And that's the basis for the felony. No, so he was speeding before he got to that alley intersection. There was testimony that he was going 80 then slowing down in the residential areas and then eventually hit the alleyway. If I understood defendant's argument, it was part of the argument was that he couldn't have been going 90 miles an hour and thrown this gun and got it over the fence and in the yard and all that, but the speeding could have slowed down. Absolutely, he could have sped down, slowed down, tossed the weapon and then sped back up. He wasn't on video or seen by the officers at that point during the alley. I don't have any other questions. Any other questions, Justice Barberos? I don't, thank you. All right, thank you. Ms. Nam, rebuttal? Yes, Your Honor. Just a few points. So Mr. Cross's argument was never that he never touched the gun or had access to a gun before. So the argument at trial isn't that he never touched this gun before, may never have touched the gun in his life. It's the fact that he had to have this gun immediately accessible to him while he was committing the underlying offenses. So while he was committing the aggravated fleeing or a looting, he had to have this gun within his reach. It couldn't have been behind him, in the car, out of reach. It couldn't have been somewhere- Excuse me, aren't those fact questions that the jury determined? And do we substitute our judgment for that of the jury finding that he did have the gun? If we do, would you delight in most favorable to the state? No, Your Honor. So this is not a merely factual issue. So the factual issue is that this- or at least I should explain that the state's case as to- the state's case here was circumstantial. And the fact is we need a nexus with him having access to the gun while committing the underlying offense. And the state's evidence is not- there is no evidence about him actually touching the gun or having access to the gun or his gun being in his hand. So officers don't see it. Civilians do not see it. He's not found with the gun. No one ever saw the gun in his car. So this is factually- there was no evidence presented that anyone actually saw the gun in his car, in his hand. He wasn't found with the gun. The gun's found in someone's backyard. Again, the state's theory was that he had to chuck or hurl beyond this tall fence while he was driving. So the facts are that the gun was found in the backyard and that no gun was seen in his hand or in his car when the officer stopped him. And again, there was nothing found on him when he was later arrested. So those are the facts. The state's arguing that these are reasonable inferences that can be made. But again, we have the facts that he's from that area. So again, that explains why maybe his DNA is on the gun is because he's from the 1400 Edwards Street area. And not only is his DNA on it, but three others are on it as well. And again, we're not arguing that he's never had possession of this gun. The state has to prove that he had it while he was driving. It's not that he had it the day before, weeks before, or even hours before. He had to have it in his hand or accessible to him when he was committing the underlying offenses. Also, the issue is that the state's speculating or these are maybe saying that maybe he fled or maybe he eluded the police because he had this gun, but that's not enough. We need more than just maybes or speculation. And here, again, the lead up to the initial stop is important. He was without having a warrant out for his arrest, without doing anything suspicious. Detective Morey misidentifies him and then covert unmarked police vehicles are trailing him or following him. At that point, he's driving, noticing and the officers are trailing him. And then when he stopped, he asked the officers, why am I being pulled over or what did I do? And officers won't explain what's happening. And we have these four, at least the four Decatur police vehicles that surround him, won't tell him what he's being pulled over for, just wants him to get out of the car, pull out the keys, give him the keys. So at that point, he's fleeing. It's not, it's a leap to argue that he's fleeing because he has something when we have the lead up to this case, where again, he wasn't a person of interest. He wasn't under suspicion. Basically, Morey's identification or misidentification leads to that initial stop, where the officers won't tell him why he is being pulled over. So again, your honors, because there was no nexus proved by the state beyond a reasonable doubt. So even in the light, most favorable to the state, there is no nexus of the gun being in his hands or within his reach while he was committing the underlying offenses. So unless this court has questions, we ask this court for an outright reversal of the armed violence convictions. Thank you. Questions, Justice Barberos? No, thank you. All right, thank you. We appreciate your arguments. We'll take those under advisement. We'll issue a decision in due course.